# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———————

No. 01-6020EM

——————————

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Popkin & Stern, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | |
| | * | |
| Robert J. Blackwell, Liquidating | * | |
| Trustee of the Popkin & Stern | * | Appeal from the United |
| Liquidating Trust, | * | States Bankruptcy Court |
| | * | for the Eastern District of |
| Plantiff - Appellee, | * | Missouri |
| | * | |
| v. | * | |
| | * | |
| Nancy Fendell Lurie | * | |
| Defendant, | * | |
| | * | |
| Ronald U. Lurie, | * | |
| Interested Party - Appellant. | * | |
| | * | |
| | * | |

———————

Submitted: July 5, 2001
Filed: September 4, 2001

———————

Before KOGER, KRESSEL, and DREHER, Bankruptcy Judges.

———————

DREHER, Bankruptcy Judge.

Ronald U. Lurie ("Lurie") appeals from portions of the bankruptcy court's order of March 6, 2001. For the reasons set forth below, we reverse.

## FACTS and PROCEDURAL HISTORY

A.     The Popkin & Stern Bankruptcy

This dispute arises in the bankruptcy case of Popkin & Stern, a St. Louis law firm ("Debtor"). Lurie was a general and managing partner of the firm. Debtor's bankruptcy case was commenced on March 26, 1992 by the filing of an involuntary petition. Debtor then converted the case to one under chapter 11 and Appellee Robert Blackwell ("Blackwell") was appointed trustee.

On August 27, 1993, the bankruptcy court confirmed Debtor's proposed plan of reorganization. That plan provided for the creation of a liquidating trust to collect Debtor's assets and distribute them to creditors pursuant to the terms of the plan. The plan further provided that Blackwell would be the trustee of the liquidating trust.

B.     The Adversary Proceeding Against Lurie

As part of his duties as the liquidating trustee, Blackwell sued Lurie under Section 723 of the Bankruptcy Code . On October 20, 1994, the bankruptcy court entered a judgment in favor of Blackwell and against Lurie for $1,121,743.00("the Lurie judgment"). The Lurie judgment was for the estimated deficiency to be assessed against Lurie, as a partner of Debtor. It also provided that if the amount of the deficiency was ultimately determined to be less than the amount of the judgment, "the Liquidating Trustee shall move this court to reduce this judgment." It is this quoted language that serves as the basis of Lurie's current appeal. Lurie appealed from the Lurie judgment, but his appeal was dismissed for failure to prosecute.

On October 2, 1997, at the request of Blackwell, the bankruptcy court issued an order reviving the judgment.[1] Lurie also appealed from this order. The order reviving the Lurie judgment was subsequently affirmed by both the Bankruptcy Appellate Panel and the Eighth Circuit Court of Appeals. Blackwell v. Lurie (In re Popkin & Stern), No. 97-6091EM, slip op. (B.A.P. 8th Cir. 1998) (unpublished), *aff'd*, Blackwell v. Lurie (In re Popkin & Stern), 168 F.3d 494 (8th Cir. 1998)(unpublished). On October 30, 2000, again at the request of Blackwell, the bankruptcy court issued a second order reviving the Lurie judgment. Lurie did not appeal this order.

Blackwell has since filed and executed on the Lurie judgment in numerous jurisdictions. He has also obtained at least one charging order from the bankruptcy court allowing him to execute against certain separately held assets of Lurie.

C.     The Adversary Proceeding Against Nancy Lurie

As part of his attempts to gather assets of Popkin & Stern, Blackwell also commenced a separate adversary proceeding against Nancy Lurie, Lurie's wife. Blackwell claimed that Nancy Lurie was the recipient of numerous fraudulent transfers. Lurie was not a party to this action. Blackwell obtained a judgment against Nancy Lurie in the amount of $352,300.95, plus interest ("Nancy's judgment"). This judgment explicitly provides that it is merged for execution purposes with the Lurie judgment, but that Blackwell is only entitled to execute on assets jointly owned by Nancy Lurie and Lurie up to the amount of Nancy's judgment. To recover the remainder of the Lurie judgment, Blackwell would have to find assets owned by Lurie separately.

In the early stages of the case against Nancy Lurie, at Lurie's request, the bankruptcy court issued an order dated February 21, 1995 which enjoined, until further

---

[1]Prior to the 2001 amendments, Missouri judgment liens survived only 3 years. MO. REV. STAT. § 511.360.

3

order of the court, sale by anyone, including the Luries and Blackwell, of certain artwork and a wine collection ("the freeze order"). In late 1999, the freeze order became the subject of several motions and counter motions. Blackwell moved to lift the freeze order on the wine collection so as to allow him to execute on it. Nancy Lurie countered with her own motion for an accounting from the Trustee regarding how he had applied sums collected from execution on the two judgments. Nancy Lurie also sought a reduction of the Lurie judgment pursuant to the language quoted above which called for an adjustment depending upon how the partnership bankruptcy evolved.

On December 1, 1999, the bankruptcy court convened a hearing to resolve these several pending motions. Subsequently, on December 21, 1999, the court issued an order in which it found that the Lurie judgment was a full and final judgment no longer subject to appeal. The court also held that the time to move for relief from the Lurie judgment under Bankruptcy Rule 9024 (incorporating FED. R. CIV. P. 60) had passed, that the Lurie judgment was final, and the amount of the judgment was not subject to reduction. The court also found that Nancy Lurie was collaterally estopped and did not have standing to challenge the Lurie judgment. There is, however, nothing in the record indicating that Lurie appeared, was represented, or participated in any of these proceedings. He was certainly not a party.

In the summer of 2000, the judgment against Nancy Lurie was fully satisfied. She then sought an order from the bankruptcy court lifting the freeze order on two pieces of artwork, one located in New Mexico and the other in Wyoming, both of which were jointly owned by the Luries. She argued that, since the liquidating trustee had satisfied his judgment against Nancy Lurie, he was no longer entitled to execute on jointly owned property. Blackwell filed a response in which he argued that state law controlled and that the freeze order should be lifted to allow him to execute on it because, under applicable state law, the property would not be considered jointly owned. As part of a supplemental response he also, for the first time, raised a totally

extraneous issue. Blackwell requested the bankruptcy court to reiterate the finding it had made in its order of December 21, 1999, to the effect that the Lurie judgment was final, unappealable, and not subject to reduction. Blackwell was having problems in Montana executing against property unrelated to the property at issue in the motion because Lurie was arguing to the Montana state court that the Lurie judgment was ambiguous. Blackwell asked the bankruptcy court to include language in the order on the pending motion that would make clear, once again, and he hoped once and for all, that the judgment against Lurie was final and was not subject to reduction. Blackwell urged that reduction was no longer an option because the bankruptcy court had issued a final nonappealable judgment in 1994, had issued two orders reviving the judgment, and had issued its December 19, 1999 order in Nancy Lurie's proceeding.

The court held a hearing on February 26, 2001. Blackwell and Nancy Lurie were represented by counsel. Lurie, who had been served with the supplemental response, appeared by telephone, but did not file a response to the motion nor state a position on the record. Apparently, the bankruptcy court had much earlier required Lurie be served and appear in all proceedings in Nancy Lurie's case, presumably for the purpose of making sure Lurie was aware of what was happening in Nancy Lurie's case. The hearing on this date also covered other matters which Lurie did respond to. However, nothing in the record suggests that Lurie was ever joined as a party or intervened in the adversary proceeding involving Nancy Lurie.

On March 6, 2001, the bankruptcy court issued the order appealed from, in which it denied the motion by Nancy Lurie to lift the freeze order and granted the Trustee's request to proceed with an execution against the artwork (indeed, against all assets generally). In that portion of the order from which Lurie appeals, the bankruptcy court ordered in, in part:

> that the October 20, 1994 Judgment in favor of the Liquidating Trustee against Ronald Lurie for One Million One Hundred Twenty-One Thousand Seven Hundred Forty-Three Dollars ($1,121,743.00) is a full

and final non-appealable and non-modifiable judgment which allows the Liquidating Trustee to execute on any and all property in order to enforce and/or collect said judgment.

And, in the next paragraph the court went on to order:

that Ronald Lurie, Nancy Lurie, Michael Lurie and Ryan Lurie are barred by collateral estoppel and res judicata to challenge either the October 20, 1994 Judgment against Ronald Lurie or the Popkin & Stern deficiency amount.

## DECISION

Lurie does not take issue with the bankruptcy court's decisions regarding the freeze order. Rather, he vigorously contends that the bankruptcy court erred in holding that the Lurie judgment was final, not subject to reduction, and not subject to his collateral attack. He advances a number of arguments as to why the judgment against him was erroneous at the onset and is, at a minimum, ambiguous. He asserts that this court should reverse and remand so that the bankruptcy court can address his continuing assertions that the original amount of the judgment against him must be reduced because, as facts have developed, the deficiency is much less than originally anticipated. He also wants this court to require an accounting from the trustee of collections, allocations and disbursements on the judgment. He contends that until the judgment is reduced to a sum certain it cannot serve as the basis for a valid execution. He also asserts that we should reverse the bankruptcy court because Lurie was not a party to the Nancy Lurie adversary proceeding in which the appealed from order was issued and the court made its determination regarding the finality of the Lurie judgment even though no motion to affirm, modify or alter the judgment against him had been made.

Blackwell responds that the bankruptcy court properly held that the Lurie judgment was unalterable. He points to the failure to effectively appeal the judgment

in the first place, the history of several revivals, the many steps that he has successfully taken to execute on the judgment, and the December 21, 1999 order in Nancy Lurie's case. He argues that Lurie is not free to contend that the Lurie judgment needs to be clarified, citing res judicata, collateral estoppel, and law of the case. He also asserts that even though no motion was made, Lurie was served with the responsive papers, did nothing, and cannot now argue the merits on appeal.

In his Reply Brief, Lurie takes a different tack. He contends that the bankruptcy court's order modified the Lurie judgment. While he concedes that the judgment was final and cannot be altered, he asserts that it is ambiguous, subject to adjustment, and that the bankruptcy court improperly modified it by making it not subject to adjustment.

We begin with three unassailable propositions: 1) Lurie was not a party to Nancy Lurie's adversary proceeding and he did not participate in the proceedings, either in writing or orally; 2) the issue of reiterating the finality and inalterability of the Lurie judgment was not joined in the proceedings and no motion had been made to alter or amend it; and 3) in the absence of such a motion, the judgment is final and unalterable. Nonetheless, we conclude that although Lurie was not a party to the case, he has standing to appeal from the order. We also conclude that as a nonparty, the bankruptcy court lacked personal jurisdiction over Lurie and he is not bound by the March 6, 2001 order of the court.

A.    Standing

On appeal the issue of standing was not raised by Lurie or Blackwell, but is essential to the court's consideration of the appeal. If Lurie does not have standing, then this court does not have jurisdiction to decide any other issues raised on appeal. Starr v. Mandanici, 152 F.3d 741, 747 (8th Cir. 1998) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause.' ") (quoting Ex parte McCardle, 7 U.S.(Wall.) 506, 514 (1868))).

7

Standing is an element of federal subject matter jurisdiction which cannot be waived and may be raised at any time by a party or by the court.[2] *See, e.g.,* Magee v. Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998); Berger Levee Dist. v. United States, 128 F.3d 679, 680 (8th Cir. 1997); Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993). We determine our own jurisdiction, including the appellant's standing, *sua sponte*. National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994). Although neither Lurie nor Blackwell seek dismissal for lack of jurisdiction, the Court has an independent obligation to conduct this jurisdictional inquiry. *See* Lewis v. United States, 992 F.2d 767, 771 (8th Cir.1993); Crockett v. Lineberger, 205 B.R. 580, 581 n. 3 ( B.A.P. 8th Cir. 1997).

Generally, those who were not parties before the bankruptcy court may not appeal an order of the bankruptcy court. Clearly, Lurie is a nonparty to Nancy Lurie's adversary proceeding. In order to appeal from the order, therefore, he must have a stake in the outcome of the bankruptcy proceedings, which is "discernable from the record." Binker v. Pennsylvania, 977 F.2d 738, 745 (3d Cir.1992) (citing EEOC v. Pan American World Airways, Inc., 897 F.2d 1499 (9th Cir.1990), *cert. denied*, 498 U.S. 815 (1990)). "Ordinarily, a party to a lawsuit has no standing to appeal an order unless he can show some basis for arguing that the challenged action causes him a cognizable injury, i.e., that he is 'aggrieved' by the order." Yukon Energy Corp. v. Brandon Invs., Inc. (In re Yukon Energy Corp.), 138 F.3d 1254, 1259 (8th Cir. 1998) (quoting

---

[2]In Williams v. Marlar (In re Marlar), 252 B.R. 743, 748 (B. A. P. 8th Cir. 2000) the bankruptcy appellate panel discussed the differences between Article III standing and standing in bankruptcy court. In Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.), 151 F.3d 605, 607-08 (7th Cir. 1998), the Seventh Circuit Court of Appeals opined that bankruptcy standing is narrower than Article III standing. *Compare* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)(describing Article III standing) *with* In re Andreuccetti, 975 F.2d 413, 416 (7th Cir.1992)(describing bankruptcy standing). Only those persons affected pecuniarily by an order have standing to appeal. In re Marlar, 252 B.R. at 748.

Spencer v. Casavilla, 44 F.3d 74, 78 (2d Cir.1994)); Rodney v. Piper Capital Mgmt. (In re Piper Funds), 71 F.3d 298, 301 (8th Cir. 1995) ( noting that equitable considerations clearly warrant giving standing to appeal to a nonparty that has been "haled ... into district court despite [its] objections.")( quoting S.E.C. v. Wencke, 783 F.2d 829, 834 (9th Cir.), *cert. denied,* 479 U.S. 818 (1986)).

The issue of whether Lurie is a person " aggrieved" by the order of the bankruptcy court is a question of fact. Fidelity Bank v. M.M. Group, Inc., 77 F.3d 880, 882 (6th Cir. 1996). In this case, Lurie is "aggrieved." The bankruptcy court's order from which Lurie appeals imposes an obligation upon him. Under the terms of paragraph 3 of the bankruptcy court's order the Lurie judgment "is a full and final non-appealable and non-modifiable judgment which allows the Liquidating Trustee to execute on any and all property in order to enforce and/or collect said judgment." Pursuant to paragraph 4 Lurie is "barred by collateral estoppel and res judicata to challenge either the October 20, 1994 Judgment against Ronald Lurie or the Popkin & Stern deficiency amount."

A fair inference from such an order is that the court might exercise its powers, including its contempt power, to enforce its order and punish noncompliance. *See* Gardiner v. A.H. Robins Co., Inc. 747 F.2d 1180, 1187 n. 8. (8th Cir. 1984)(citing Smith v. Eggar, 655 F.2d 181, 184-85 (9th Cir. 1981)). The order could be interpreted as an injunction against Lurie, preventing him from seeking a reduction in the deficiency amount, and not merely a statement of fact by the court. " [W]here a non-party is purportedly bound by an injunction, the non-party may bring an appeal rather than face the possibility of a contempt proceeding." Hilao v. Estate of Marcos (In re Estate of Marcos Human Rights Litig.), 94 F.3d 539, 544 (9th Cir.1996). *See also* In re Piper Funds, Inc., 71 F.3d at 301 ("A nonparty normally has standing to appeal when it is adversely affected by an injunction."). The bankruptcy court has the power to find Lurie in either criminal or civil contempt for violation of its order. *See* Brown v. Ramsay (In re Ragar), 3 F.3d 1174, 1179 (8th Cir. 1993); 11 U.S.C. § 105.

9

Even if the bankruptcy court's order was later found to be void for lack of personal jurisdiction, the risk to Lurie of being the subject of a contempt proceeding is too great. *See* <u>Gardiner</u>, 747 F.2d at 1188. He is "aggrieved" by being subjected to such a risk. Having found that Lurie is "aggrieved" by the bankruptcy court's March 6, 2001 order we conclude that he does have standing to appeal. *See* <u>In re Ferren</u>, 227 B.R. 279, 282 (B.A.P. 8th Cir. 1998), *aff'd,* <u>Ferren v. Searcy Winnelson Co. (In re Ferren)</u>, 203 F.3d 559 (8th Cir. 2000).

B. Personal Jurisdiction

Once standing is determined, the issue of the bankruptcy court's personal jurisdiction of Lurie must be resolved.. The bankruptcy court must have jurisdiction over those persons subject to its orders. Personal jurisdiction is an essential element of bankruptcy court jurisdiction, without which the court may not proceed to an adjudication. <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 584 (1999) (citing <u>Employers Reinsurance Corp. v. Bryant</u>, 299 U.S. 374, 382 (1937)). Without personal jurisdiction, any order the bankruptcy court enters against Lurie is void. *See* <u>U.S. v. Kirschenbaum</u>, 156 F.3d 784, 795 (7th Cir. 1998).

Lurie has the right to insist that the bankruptcy court have personal jurisdiction over him before submitting to the authority of the court. He may forgo that right, effectively consenting to the court's exercise of adjudicatory authority. *See* FED. R. BANK. P. 7012 incorporating FED. R. CIV. P. 12(h)10(1) (defense of lack of jurisdiction over the person can be waived). However, nothing in the record suggests that Lurie waived personal jurisdiction. The service of Lurie by the Trustee of the supplemental response and Lurie's appearance by telephone does not make him a party to the proceeding. He did not file a response to the motion nor was he asked to state a position on the record. Although Lurie had an ownership interest in the property subject to the court's freeze order and may have intervened, he did not. Lurie

10

is not appealing the lifting of the freeze order, only the extraneous order of the bankruptcy court regarding the status of the Lurie judgment. The status of that judgment and specifically, whether the judgment should be or could be altered, amended or clarified can only be made by motion brought by the Trustee in the action against Lurie, not in Nancy Lurie's case.

Lurie is clearly not a party to Nancy Lurie's adversary proceeding. Therefore, the bankruptcy court lacked personal jurisdiction of Lurie and the court's March 6, 2001 order is void as it applies to Lurie. Having determined that the bankruptcy court did not have personal jurisdiction of Lurie in the Nancy Lurie adversary proceeding, all other issues presented on appeal are moot.

ACCORDINGLY, we reverse that part of the March 6, 2001 order to the extent that it purports to bar Ronald U. Lurie from challenging the Lurie judgment.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT

11