This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                        **NO. 29,378**

**STEVEN STILL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Gary K. King, Attorney General
Santa Fe, NM

M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Chief Public Defender
Nancy M. Hewitt, Appellate Defender
Kathleen T. Baldridge, Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

Defendant appeals his convictions for one count of aggravated fleeing and one count of aggravated driving while intoxicated (DWI) entered pursuant to a conditional plea reserving his right to appeal the district court's denial of his motion to suppress evidence. Defendant contends that the district court improperly denied his motion to suppress, arguing that the officer lacked reasonable suspicion at the inception of the traffic stop and that the stop was pretextual under *State v. Ochoa*, 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143. We affirm.

**BACKGROUND**

At the suppression hearing, the district court entered detailed findings of fact regarding the traffic stop, which reflected the following. On August 30, 2008, Officer Mike Briseno of the Farmington Police Department drove by a parked car in a parking lot and observed Defendant sitting in the driver's seat leaning over in a manner he believed indicated that Defendant was administering drugs by intravenous injection. Officer Briseno testified that he decided to circle the block and re-approach the parking lot with the intention of running a license plate check on the vehicle. Upon re-approaching the lot, the officer saw that Defendant had left the parking lot and was en route on a roadway. The officer began following Defendant to investigate further. The officer's pacing of Defendant indicated that Defendant was speeding. The officer testified that he was driving 30 mph over the posted speed limit and was unable to

gain on Defendant's vehicle. The officer also observed Defendant's vehicle cross the center double yellow lines twice. After Defendant's vehicle and the officer's marked police unit cleared an intersection, Officer Briseno activated his emergency lights to pull Defendant over. Rather than stopping his vehicle, Defendant continued driving in excess of the speed limit and failed to stop at two posted stop signs, including one where two other vehicles were present.

Eventually, Defendant's vehicle stalled and Officer Briseno made contact with Defendant. Upon approaching Defendant, Officer Briseno observed that Defendant was lethargic, sweating profusely, pale, and the officer also smelled the odor of an alcoholic beverage on Defendant's breath. Defendant was ultimately arrested and charged with aggravated DWI, aggravated fleeing a law enforcement officer, driving with a suspended or revoked license, possession of drug paraphernalia, and possession of an open container in a motor vehicle. He was also cited for failure to maintain a lane and the two stop sign violations.

Defendant filed a motion to suppress the evidence obtained as a result of the traffic stop, arguing that the officer lacked reasonable suspicion at the inception of the stop and, alternatively, that if reasonable suspicion existed, the stop was pretextual under *Ochoa*. Defendant specifically argued that the video from Officer Briseno's in-

car camera did not show Defendant committing any traffic violations and, therefore, the officer lacked reasonable suspicion and stopped Defendant on pretextual grounds.

Upon reviewing the in-car video and hearing testimony from Officer Briseno, the district court denied Defendant's motion to suppress, concluding that the stop "was not a pretext to search the vehicle for drugs" and that "the seizure of [Defendant] was valid under the New Mexico Constitution." Defendant then entered a conditional guilty plea to aggravated fleeing a law enforcement officer, in violation of NMSA 1978, Section 30-22-1.1 (2003), and aggravated DWI, in violation of NMSA 1978, Section 66-8-102(D)(3) (2008) (amended 2010), reserving the right to appeal the district court's denial of his motion to suppress. This appeal followed.

**DISCUSSION**

On appeal, Defendant argues that his motion to suppress should have been granted because (1) Officer Briseno lacked reasonable suspicion of criminal activity at the inception of the traffic stop, and (2) even if reasonable suspicion existed, the stop was pretextual under *Ochoa*.

**A.    Standard of Review**

Because suppression of evidence is a mixed question of law and fact, we apply a two-part review to a district court's decision regarding a motion to suppress. We determine "whether the law was correctly applied to the facts, viewing them in a

manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). In doing so, we defer to the district court's findings of facts to the extent they are supported by substantial evidence. *Id.* We "review the application of the law to these facts, including determinations of reasonable suspicion, under a de novo standard of review." *State v. Patterson*, 2006-NMCA-037, ¶ 13, 139 N.M. 322, 131 P.3d 1286.

**B.      Reasonable Suspicion**

Defendant first contends that Officer Briseno did not have reasonable suspicion of criminal activity at the inception of the traffic stop. He argues that the officer's initial observation of Defendant in his parked vehicle "leaning forward and focusing down on his left arm" was insufficient to constitute reasonable suspicion to justify the seizure of Defendant.

Relying upon *State v. Garcia*, 2009-NMSC-046, 147 N.M. 134, 217 P.3d 1032, the parties agree that Defendant was "seized" at the moment when Officer Briseno first engaged his emergency equipment. *See id.* ¶ 15 (determining that under our state constitution, a person has been seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free" (internal quotation marks and citation omitted)). Because the parties are in

agreement on this point, we address whether the officer had reasonable suspicion to seize Defendant at that time.

An "[i]nvestigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken." *Jason L.*, 2000-NMSC-018, ¶ 20 (internal quotation marks and citation omitted). "Reasonable suspicion must exist at the inception of the seizure." *Id.* In other words, in order for a traffic stop to be justified at its inception, "[t]he officer, looking at the totality of the circumstances, must be able to form a reasonable suspicion that the individual in question is engaged in or is about to be engaged in criminal activity." *State v. Contreras*, 2003-NMCA-129, ¶ 5, 134 N.M. 503, 79 P.3d 1111. Reasonable suspicion is defined as "a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Jason L.*, 2000-NMSC-018, ¶ 20. "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038. "Unsupported intuition and inarticula[ble] hunches are not sufficient." *Jason L.*, 2000-NMSC-018, ¶ 20 (internation quotation marks and citation omitted).

Looking at the totality of the circumstances, we conclude that Officer Briseno had a "particularized suspicion . . . that [Defendant was] breaking, or ha[d] broken[]

6

the law" at the inception of the traffic stop. *See id.* This Court has previously stated that "[a] police officer may stop a vehicle if he has an objectively reasonable suspicion that the motorist has violated a traffic law." *State v. Vandenberg*, 2002-NMCA-066, ¶ 17, 132 N.M. 354, 48 P.3d 92, *rev'd on other grounds*, 2003-NMSC-030, 134 N.M. 566, 81 P.3d 19; *see State v. Prince*, 2004-NMCA-127, ¶ 9, 136 N.M. 521, 101 P.3d 332. In this case, Officer Briseno testified that before he activated his emergency lights, he observed Defendant commit three specific traffic law violations. The officer stated that although he was traveling 55 mph in a 25 mph zone while following Defendant, he was "still not gaining any distance on [Defendant's] vehicle." In addition to the speeding, the officer testified that "on at least two occasions, [Defendant's vehicle's] left tires crossed over the double yellow line[s] which separate[d] both the north and southbound traffic lanes." The officer further testified he did not activate his emergency lights until after he had observed the speeding, the two traffic lane violations, and both Defendant's and the officer's vehicles had cleared an intersection. Thus, at the point Defendant was seized, Officer Briseno already had observed specific articulable facts that, when viewed objectively, would lead to reasonable suspicion that Defendant had broken the law based on the three traffic code violations. *State v. Hubble*, 2009-NMSC-014, ¶ 35, 146 N.M. 70, 206 P.3d 579 (holding that reasonable suspicion existed for a traffic stop when the officer had

7

observed the defendant violate the turn signal statute); *Vandenberg*, 2003-NMSC-030, ¶ 19 (stating that reasonable suspicion existed for a traffic stop based on the defendant's speeding in a construction zone); *Prince*, 2004-NMCA-127, ¶ 11 (determining that reasonable suspicion existed for a traffic stop when the defendant was observed driving in excess of the speed limit).

To the extent that Defendant argues that the officer's basis for reasonable suspicion was only a "vague hunch that [Defendant] was injecting himself with a controlled substance" before he started following Defendant, we are unpersuaded. Defendant appears to ignore the officer's undisputed testimony at the suppression hearing regarding the traffic violations and, specifically, the fact that the officer testified that he observed the traffic violations prior to activating his emergency lights—the point at which Defendant claims he was seized. Therefore, we conclude that the officer had reasonable suspicion to stop Defendant once he observed Defendant's speeding and failure to maintain the traffic lane.

**C.    Pretextual Stop**

Defendant also contends that the traffic stop was illegal because it was pretextual under *Ochoa*. He argues that the officer "pulled [Defendant] over, not because he believed [Defendant] had driven over the double yellow [lines] in the roadway, but because he believed that [Defendant] had been engaged in some other

8

criminal wrongdoing back at the parking lot." The district court concluded that "Officer Briseno's decision to initiate a traffic stop based on [Defendant] crossing the yellow line[s] was not a pretext to search [Defendant's] vehicle for drugs."

In *Ochoa*, this Court departed from federal constitutional law and held that pretextual traffic stops violate Article II, Section 10 of the New Mexico Constitution. 2009-NMCA-002, ¶ 1. We defined a pretextual traffic stop as a "detention supportable by reasonable suspicion or probable cause to believe that a traffic offense has occurred, but [that] is executed as a pretense to pursue a 'hunch,' a different more serious investigative agenda for which there is no reasonable suspicion or probable cause." *Id.* ¶ 25. In determining whether a traffic stop is pretextual, we explained that the district court should first determine whether there was reasonable suspicion or probable cause for the stop and then decide if the officer's actual motive for the stop was unrelated to the justification for the stop. *Id.* ¶ 40. "The defendant has the burden of proof to show pretext based on the totality of the circumstances" and, "[i]f the defendant has not placed substantial facts in dispute indicating pretext, then the seizure is not pretextual." *Id.* However, "[i]f the defendant shows sufficient facts indicating the officer had an unrelated motive that was not supported by reasonable suspicion or probable cause, then there is a rebuttable presumption that the stop was

pretextual," at which point the burden shifts to the state to prove that the officer would have stopped the defendant even without the alternate motive. *Id.*

In this case, having already decided that the district court properly found that there was reasonable suspicion for the traffic stop based on the traffic violations, we address whether Defendant met his burden of showing pretext by presenting "sufficient facts indicating [that] the officer had an unrelated motive that was not supported by reasonable suspicion or probable cause." *Id.* We conclude that Defendant failed to meet this burden.

Defendant argues that the following facts establish pretext: (1) the officer's initial hunch of drug activity based on seeing "a person leaning over in a vehicle," (2) the activity in the parked vehicle occurred "behind the tinted glass of [Defendant's vehicle] and a substantial distance away from the police unit," and (3) Defendant was not cited for a speeding violation and "there is [a] question as to whether [the] charge of failure to maintain traffic lane could be substantiated by the activity before or after the officer activated his emergency equipment." However, Defendant has failed to cite record support establishing that Defendant's vehicle windows were tinted or that the officer observed Defendant's parked vehicle from a distance. At the suppression hearing, no testimony was elicited regarding the characteristics of Defendant's vehicle or the distance from which Officer Briseno initially saw Defendant in his parked

10

vehicle. As for the traffic violations, Defendant has not indicated, either through record support or other authority, any facts that call into question when the traffic lane violations occurred; rather, the officer testified several times at the hearing that the traffic lane violations occurred before he activated his emergency lights. With regard to the speeding, although we recognize that Defendant was not cited for the speeding violation, the officer's testimony and the district court's review of the officer's in-car video indicate that Defendant was speeding.

As for Officer Briseno's initial hunch that Defendant was engaged in intravenous drug use in the parking lot, we agree with the State's argument that the officer's "suspicion about intravenous drug use . . . was not a suspicion unrelated to the traffic violations he observed." *See Ochoa*, 2009-NMCA-002, ¶ 40 (stating that the defendant must establish that there was an unrelated motive that was not supported by reasonable suspicion or probable cause). The totality of the circumstances in this case indicates that there was no unrelated motive; rather, the motive throughout the entire encounter was a belief that Defendant was under the influence of drugs. Although the initial basis for the officer's suspicion—Defendant leaning forward and focusing intently on his left arm—was not sufficient to rise to the level of reasonable suspicion, the officer proceeded to investigate his suspicion in a reasonable manner. Officers are not precluded from observing and following an individual based on their

11

speculation or hunch regarding potential criminal activity, so long as they do so within the confines of constitutional protections.  Here, Officer Briseno did not stop Defendant immediately based on his initial suspicion and instead followed Defendant to investigate further.  The officer's initial hunch regarding Defendant being under the influence was substantiated by his further observation of Defendant committing three traffic violations. The officer waited until he observed possible signs of driving under the influence before he activated his emergency equipment.  Therefore, we conclude that the officer's initial motive for following the vehicle matched the "objective existence of reasonable suspicion."  *Cf. id.* ¶¶ 40, 43-46 (holding a stop to be pretextual where the stop was initiated to investigate the defendant's involvement in drug activity, a motive unrelated to the seatbelt violation that was the objective justification for the stop).  Accordingly, we hold that Defendant has failed to establish a rebuttable presumption that the stop was pretextual.

**CONCLUSION**

Based upon the foregoing, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

12

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**TIMOTHY L. GARCIA, Judge**